# United States Court of Appeals
## For the First Circuit

No. 10-1069

UNITED AUTOMOBILE, AEROSPACE, AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA INTERNATIONAL UNION, ET AL.,

Plaintiffs, Appellants,

v.

LUIS FORTUÑO, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Boudin, Stahl, and Howard, Circuit Judges.

Miguel Simonet Sierra with whom Manuel A. Rodriguez Banchs was on brief for appellants.
Paul R. Q. Wolfson with whom Irene S. Soroeta-Kodesh, Solicitor General, Leticia Casalduc-Rabell, Acting Deputy Solicitor General, Zaira Z. Girón-Anadón, Acting Deputy Solicitor General, and Susana I. Peñagaricano-Brown, Assistant Solicitor General, were on brief for appellees.

January 27, 2011

**STAHL, Circuit Judge**. The plaintiffs, a collection of labor organizations and public employees, sued Governor Luis A. Fortuño and a number of other Puerto Rico government officials (collectively "defendants") in the United States District Court for the District of Puerto Rico. The plaintiffs alleged, among other claims, that Puerto Rico's Act No. 7 violates the Contract Clause in Article I, Section 10 of the United States Constitution. The district court, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissed the plaintiffs' claims. Because we find that the plaintiffs' third amended complaint ("complaint") failed to state a claim for a violation of the Contract Clause, we affirm.

## I. Facts and Background

When reviewing a Rule 12(b)(6) dismissal, "we must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008). "Under Rule 12(b)(6), the district court may consider only facts and documents that are part of or incorporated into the complaint . . . ." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). That said, "when a complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it . . . ." Id. (internal marks and citation omitted).

In 1998, Puerto Rico enacted Act No. 45, which gave employees "the right to negotiate a collective bargaining agreement [('CBA')] with the agency through its exclusive representative . . . ." P.R. Laws Ann. tit. 3, § 1451j. Act No. 45 also established procedures for resolving impasses in collective bargaining negotiations, and for addressing disputes arising under the CBAs. See id. et seq. By the time the plaintiffs filed this suit, fifty Puerto Rico government agencies had negotiated CBAs covering over 50,000 public employees.

On March 9, 2009, Governor Fortuño signed Act No. 7 — entitled the "Law Declaring a Fiscal State of Emergency and Establishing a Comprehensive Fiscal Stabilization Plan to Save Puerto Rico Credit" — into law.[1] See 2009 P.R. Laws Act No. 7. According to the "Public Policy Statement of Purpose" included in the bill, Act No. 7 was intended to eliminate Puerto Rico's $3.2 billion structural deficit. Id. ch. I, § 2.

As a cost-saving measure purportedly aimed at addressing this deficit, Act No. 7 laid out a three-phase plan to reduce the government payroll. See id. ch. III, § 35. Phase I established a voluntary "permanent workday reduction program" for certain senior

---

[1]In analyzing Act No. 7, we use the certified English translation filed in the district court by the plaintiffs. The defendants note that Act No. 7 was later amended, after the plaintiffs filed the translated version with the district court, but neither party asserts that those amendments are material to the analysis here.

employees, and it provided financial incentives for all employees to resign voluntarily. Id. ch. III, § 36. Phase II authorized involuntary, seniority-based layoffs upon a determination that Phase I had failed to create the necessary savings on its own. Id. ch. III, § 37. Although various categories of employees were exempted, if Phase II was to be implemented it could result in as many as 40,000 layoffs. Finally, Phase III temporarily suspended, for a period of two years, a plethora of statutory, contractual, and other provisions governing the conditions of employment for the remaining affected public employees. Id. ch. III, § 38. This phase effectively froze salaries and suspended other benefits and protections within the CBAs.

The complaint characterized Act No. 7's impact as

> substantially impair[ing] all statutory covenants and contractual obligations included in the extant [CBAs] between the exclusive bargaining representatives and the government agencies related to, inter alia, promotions, demotions, transfers; retention and lay-offs; reduction in work force and any requirement prior to order a reduction in force; reinstatement and registry of illegibility; any cross utilization, prohibition to use employees from another appropriate units; any prohibition to consolidate job duties and job classifications; any limitation to management rights; any disposition that the agency has to comply with contract obligations in conflict with Act No. 7; seniority, if in conflict with Act No. 7; dispute resolution process, reviews and appeals if in conflict with Act No. 7.

Act No. 7 did not, however, rely solely on cost-cutting measures to address Puerto Rico's deficit, but also included

-4-

revenue increases. To name just a few examples, Act No. 7 eliminated various tax credits and exemptions; increased the excise tax on cigarettes and certain alcoholic beverages; levied new taxes on certain banks and insurers; and added a residential property tax. 2009 P.R. Laws Act No. 7, pmbl.

Although the complaint acknowledged that Puerto Rico's purported reason for enacting Act No. 7 was "an alleged fiscal crisis and the potential degradation of government bonds," it contended that "the averred purpose is neither significant nor legitimate" and "some or all the obligations of contracts impaired by [Act No. 7] are not character appropriate to the declared purpose . . . ." Similarly, the complaint stated that "there were other available alternatives with lesser impact to the paramount constitutional rights affected by this legislation." It did not, however, attach or describe in detail the contracts allegedly impaired, or specify any "other available alternatives." The complaint did aver that "[t]he suspension of rights and impairment of contractual obligations for two (2) years, is unreasonable, particularly considering the life of all [CBAs] can only extend to three (3) years."

On December 14, 2009, the district court granted the defendants' Rule 12(b)(6) motion, dismissing all of the plaintiffs' federal claims and declining to exercise supplemental jurisdiction over the plaintiffs' Puerto Rico law claims. With respect to the

Contract Clause claim on appeal, the district court held that the plaintiffs failed to sufficiently allege that Act No. 7's impairments of the CBAs were unreasonable or unnecessary to an important government interest, and it therefore rejected the claim that those impairments ran afoul of the Contract Clause.[2]

## II. Discussion

This court reviews de novo a district court's Rule 12(b)(6) dismissal. Thomas, 542 F.3d at 948.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility is shown "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). Under this standard, "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

---

[2]The plaintiffs do not appeal the dismissal of their other federal claims, including their alternative Contract Clause claim, which was grounded in the theory that Act No. 7 impaired certain statutory covenants.

-6-

The Contract Clause provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."[3] U.S. Const. art. I, § 10, cl. 1. Despite its unequivocal language, this constitutional provision "does not make unlawful every state law that conflicts with any contract . . . ." Local Div. 589, Amalgamated Transit Union v. Massachusetts, 666 F.2d 618, 638 (1st Cir. 1981). Rather, "A court's task is 'to reconcile the strictures of the Contract Clause with the essential attributes of sovereign power necessarily reserved by the States to safeguard the welfare of their citizens.'" Mercado-Boneta v. Administracion del Fondo de Compensacion al Paciente, 125 F.3d 9, 14 (1st Cir. 1997) (quoting U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 20 (1977)); accord Energy Reserves Grp., Inc. v. Kan. Power & Light Co., 459 U.S. 400, 410 (1983).

To that end, Contract Clause claims are analyzed under a two-pronged test. Parella v. Ret. Bd. of R.I. Emps.' Ret. Sys., 173 F.3d 46, 59 (1st Cir. 1999). The first question "is 'whether the state law has . . . operated as a substantial impairment of a contractual relationship.'" Energy Reserves Grp., 459 U.S. at 411 (quoting Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244 (1978)); accord Parella, 173 F.3d at 59. If the contract was substantially impaired, the court next turns to the second question

---

[3]The defendants do not contest the Contract Clause's applicability to Puerto Rico, even though it is not a state.

-7-

and asks whether the impairment was "reasonable and necessary to serve an important government purpose."[4] See U.S. Trust, 431 U.S. at 25; accord Parella, 173 F.3d at 59. Where the state is alleged to have impaired a public contract to which it is a party, "less deference to a legislative determination of reasonableness and necessity is required, because the State's self-interest is at stake." Parella, 173 F.3d at 59 (internal quotation marks and citation omitted).

Assuming arguendo that the plaintiffs pled sufficient facts to satisfy the substantial impairment inquiry, we turn to the second prong of this analysis: whether the impairment was reasonable and necessary to effectuate an important governmental

---

[4]This two-pronged test is often framed as a three-part analysis: "(1) whether the contractual impairment is in fact substantial; if so, (2) whether the law serves a significant public purpose, . . . (3) whether the means chosen to accomplish this purpose are reasonable and appropriate." Sal Tinnerello & Sons, Inc. v. Town of Stonington, 141 F.3d 46, 52 (2d Cir. 1998) (internal quotation marks and citation omitted); see also Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 191 (1st Cir. 1999) (dividing the second inquiry into two subparts: whether there is a legitimate public purpose for the state action and whether the adjustment of contractual obligations is reasonable and necessary to accomplishing that purpose). We find no substantive difference between these differing characterizations of the Contract Clause analysis.

purpose.[5]  We find that the plaintiffs did not plead sufficient facts regarding this question to survive a Rule (12)(b)(6) motion.

**A.    The Plaintiffs' Burden of Establishing that the Impairment Was Unreasonable or Unnecessary**

We first address which party bears the burden of establishing the second prong.  Although neither party must <u>prove</u> anything at this stage of the litigation, determining who bears the burden of proof informs the inquiry into whether the plaintiffs' complaint was appropriately dismissed under Rule 12(b)(6).  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949 ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).

At the outset, we note that there is a real question as to whether the plaintiffs waived their argument that the defendants bear this burden by failing to raise that argument to the district court.  However, it is not necessary to resolve this question

---

[5]In addition to their arguments on the merits of the plaintiffs' claims, the defendants advance three immunity defenses. Specifically, they assert that the defendants "sued in their individual capacities . . . are entitled to qualified immunity"; the defendants sued in their official capacities for damages are entitled to Eleventh Amendment immunity; and "Governor Fortuño is entitled to legislative immunity . . . ."  Because we find that the plaintiffs have not alleged a plausible Contract Clause claim, <u>see</u> <u>infra</u>, we need not reach these arguments. <u>Cf.</u> <u>Parella</u>, 173 F.3d at 56-57 (concluding that, unlike with Article III jurisdiction issues, Eleventh Amendment immunity questions may be avoided where the case can be decided on other grounds).

because we are able to decide the burden issue on the merits.[6] That is, we hold that where plaintiffs sue a state — or in this case the Commonwealth of Puerto Rico — challenging the state's impairment of a contract to which it is a party, the plaintiffs bear the burden on the reasonable/necessary prong of the Contract Clause analysis.[7]

To begin with, the Supreme Court's formulation of the contours of a Contract Clause claim supports allocating this burden to the plaintiff. Specifically, we read U.S. Trust as holding that, even in the self-interested public contract context, a substantial impairment does not, on its own, amount to a Contract Clause violation. See 431 U.S. at 17-32 (discussing and analyzing whether the impairment at issue was substantial and whether it was reasonable and necessary to further a government purpose). Rather,

---

[6]The plaintiffs claim that the defendants rely on their waiver theory and do not alternatively argue on the merits that this burden should be allocated to the plaintiffs. We are not, however, bound by the appellee's arguments, as we may affirm a district court's decision on any ground supported by the record. See Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007); Webber v. Int'l Paper Co., 417 F.3d 229, 234 (1st Cir. 2005).

[7]Litigants may invoke the Contract Clause in a variety of contexts. One circuit has suggested that the context and posture in which the Contract Clause is invoked will dictate who bears the burden of showing reasonableness and necessity, or a lack thereof. See Seltzer v. Cochrane, 104 F.3d 234, 236 (9th Cir. 1996) ("The burden is placed on the party asserting the benefit of the statute only when that party is the state." (emphasis added)); Univ. of Haw. Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1106 (9th Cir. 1999) (same). We only address which party bears this burden in the specific context and procedural posture presented in this appeal.

the state action must also lack an important governmental purpose, or be unnecessary to or an unreasonable means of effectuating such a purpose. In other words, there are two essential elements of a Contract Clause claim: (1) substantial impairment and (2) lack of reasonableness or necessity to an important governmental purpose. It therefore stands to reason that both must be pled by plaintiffs seeking to invalidate a state action.

The fact that the Contract Clause has traditionally been interpreted to avoid limiting a state's ability to govern effectively also weighs in favor of assigning this burden to the plaintiffs.[8] To demand that the state prove reasonableness and necessity would force governments to endure costly discovery each time a plaintiff advances a plausible allegation of a substantial impairment, even where that plaintiff cannot allege a single fact to question the reasonableness or necessity of the impairment. This would not only financially burden states, it would likely discourage legislative action impacting public contracts. Such a

---

[8]For example, this court has explained that

> courts have interpreted the clause so as to harmonize the state's need to legislate in the interests of its citizens with the need to protect investors and other contracting parties against repudiation of a debt or obligation. In doing so, at least since the early 1930's, they have struck down state laws only infrequently.

Local Div. 589, 666 F.2d at 639.

result is particularly undesirable in today's fiscal environment, where many states face daunting budget deficits that may necessitate decisive and dramatic action. Cf. Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 443-44 (1934) ("[T]he court has sought to prevent the perversion of the clause through its use as an instrument to throttle the capacity of the states to protect their fundamental interests. This development is a growth from the seeds which the fathers planted.").

To be sure, "because 'the State's self-interest is at stake[,]'" U.S. Trust, 431 U.S. at 26, less deference is afforded to a state's decision to alter its own contractual obligations. See, e.g., Parella, 173 F.3d at 59; Parker v. Wakelin, 123 F.3d 1, 5 (1st Cir. 1997). Saddling a plaintiff with the burden of proving a lack of reasonableness or necessity is in some tension with the Supreme Court's instruction that "complete deference to a legislative assessment of reasonableness and necessity is not appropriate . . . ." See U.S. Trust, 431 U.S. at 26; see also McGrath v. R.I. Ret. Bd., 88 F.3d 12, 16 (1st Cir. 1996) ("[A] state must do more than mouth the vocabulary of the public weal in order to reach safe harbor . . . ."). Not surprisingly, many courts have concluded that this burden rests with the state,[9] and

_____

[9]See, e.g., S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 894 (9th Cir. 2003) (adopting the district court's opinion, which allocated the burden to the city-defendant); Toledo Area AFL-CIO Council v. Pizza, 154 F.3d 307, 323 (6th Cir. 1998); Mass. Cmty. Coll. Council v. Commonwealth of Mass., 649 N.E.2d 708, 712-

-12-

others, including this court and the Supreme Court, have used language that arguably supports such a conclusion.[10]

However, neither this court nor the Supreme Court has ever held that this burden rests with the state, and none of the courts that have placed this imposition onto the state have analyzed the issue in detail. Furthermore, at least one circuit, albeit also with cursory reasoning, appears to agree with us. In Buffalo Teachers Federation v. Tobe, the Second Circuit concluded that:

> [T]he state will not be held liable for violating the Contracts Clause . . . unless plaintiffs produce evidence that the state's self-interest rather than the general welfare of the public motivated the state's conduct. On this issue, plaintiffs have the burden of proof because the record of what and why the state has acted is laid out in committee hearings, public reports, and legislation, making what motivated the state not difficult to discern.

---

13 (Mass. 1995); State of Nev. Emps. Ass'n, Inc. v. Keating, 903 F.2d 1223, 1228 (9th Cir. 1990).

[10]U.S. Trust, 431 U.S. at 31 ("In the instant case the State has failed to demonstrate that repeal of the 1962 covenant was similarly necessary. We also cannot conclude that repeal of the covenant was reasonable . . . ." (emphasis added)); see, e.g., Mercado-Boneta, 125 F.3d at 15 ("And the reasonableness inquiry requires a determination that the law is reasonable in light of the surrounding circumstances." (emphasis added) (internal marks and citation omitted)); Horwitz-Matthews, Inc. v. City of Chicago, 78 F.3d 1248, 1250 (7th Cir. 1996) ("We are speaking of the prima facie impairment, and not the issue of justification, on which most impairment of contracts cases in the modern era have foundered.").

-13-

464 F.3d 362, 365 (2d Cir. 2006);[11] cf. Sal Tinnerello & Sons, 141 F.3d at 55 (private contract context; "Tinnerello must prove that there is no rational relationship between the Town's ends and its means. . . . Tinnerello has not carried its burden").

To the extent the plaintiffs argue that the more limited deference afforded to state decision-making in the public contract context demands allocating this burden to the state, we are unpersuaded. Although a state action impairing its own contracts is viewed less deferentially compared to a state action impairing private contracts, "less deference does not imply no deference." Buffalo Teachers Fed'n, 464 F.3d at 370; see also U.S. Trust, 431 U.S. at 26 ("[C]omplete deference to a legislative assessment of

_____

[11]Buffalo Teachers Federation articulated the Contract Clause analysis as having three parts: (1) substantial impairment, (2) legitimate public purpose, and (3) impairment reasonable and necessary to serve that public purpose. The plaintiffs assert that Buffalo Teachers Federation only held that plaintiffs bear the burden on the second question of whether the action had a legitimate purpose. As suggested above, however, see supra note 4, the legitimate public purpose question is folded into the reasonable and necessary inquiry in the two-pronged analysis. Moreover, requiring plaintiffs to prove that "the state's self-interest rather than the general welfare . . . motivated the state's conduct" is logically irreconcilable with requiring the state to prove that its action was reasonable and necessary to effectuate an important governmental purpose.

The plaintiffs further attempt to distinguish the case at hand from Buffalo Teachers Federation by noting that in Buffalo Teachers Federation the state impaired a municipality's contractual obligations, not its own. Although Buffalo Teachers Federation did pertain to the impairment of a municipal contract, the court, "for the purposes of this appeal," afforded the challenged impairment the same level of deference it would have afforded an impairment of a contract to which the state was a party. 464 F.3d at 370.

-14-

reasonableness and necessity is not appropriate . . . ." (emphasis added)).  This maxim is particularly true in the Contract Clause context because the heightened deference afforded to private contractual impairments is quite substantial.[12]  It therefore comes as no surprise that, even when the state impairs its own contractual obligations, the state's judgment that the impairment was justified is afforded meaningful deference.  See Local Div. 589, 666 F.2d at 643 ("[W]here economic or social legislation is at issue, some deference to the legislature's judgment is surely called for."); Buffalo Teachers Fed'n, 464 F.3d at 370-71 (describing the deference owed to legislative judgments even where they impair public contractual obligations); Baltimore Teachers Union, Am. Fed'n of Teachers Local 340, AFL-CIO v. Mayor and City Council of Baltimore, 6 F.3d 1012, 1019 (4th Cir. 1993) ("[A]lthough the Court has never specified what it intends by the requirement of a more searching examination, it appears to mean by this only that the legislature's asserted justifications for the impairment shall not be given the complete deference that they otherwise would enjoy." (citing Energy Reserves Grp., 459 U.S. at

_____

[12]See, e.g., Houlton Citizens Coal., 175 F.3d at 191 ("Upon finding a legitimate public purpose, the next step ordinarily involves ascertaining the reasonableness and necessity of the adjustment of contract obligations . . . . Withal, an exception to this rule exists when the contracts at issue are private and no appreciable danger exists that the governmental entity is using its regulatory power to profiteer or otherwise serve its own pecuniary interests. In such instances, a court properly may defer to the legislature's judgment. . . ." (internal citation omitted)).

413 n.14)). Accordingly, the fact that public contract impairment is subject to a more searching inquiry hardly demands allocating the burden of proof to the defendants.

Nor would allocating this burden to plaintiffs substantially inhibit meritorious Contract Clause claims. "[B]ecause the record of what and why the state has acted is laid out in committee hearings, public reports, and legislation," it is not difficult to discern the state's motivation. Buffalo Teachers Fed'n, 464 F.3d at 365; see also Mercado-Boneta, 125 F.3d at 15 (in explaining the public purpose in affirming a Rule 12(b)(6) dismissal, noting that "[t]he Commonwealth's interests are revealed by the statutory scheme"). Consequently, a plaintiff with reason to believe that a state action was unreasonable or unnecessary can, in the complaint, list the state's articulated motive(s), and then plead facts that undermine the credibility of the those stated motives or plead facts that question the reasonableness or necessity of the action in advancing the stated goals. For example, if a state purports to impair a contract to address a budgetary crisis, a plaintiff could allege facts showing that the impairment did not save the state much money, the budget issues were not as severe as alleged by the state, or that other cost-cutting or revenue-increasing measures were reasonable alternatives to the contractual impairment at issue.

**B.** **The Plaintiffs' Failure to Plead Sufficient Facts to Support a Reasonable Inference that Act No. 7 Was Unreasonable or Unnecessary**

Having resolved that a lack of reasonableness or necessity is an element of a Contract Clause claim for which the plaintiffs bear the burden of establishing, we turn to whether the plaintiffs pled sufficient facts to allow a court to draw a reasonable inference that Act No. 7 was unreasonable or unnecessary to effectuate an important governmental purpose.[13]  See Iqbal, 129 S. Ct. at 1949.

As this court has explained, the reasonableness inquiry asks whether "the law is 'reasonable in light of the surrounding circumstances,'" and the necessity inquiry focuses on "whether [Puerto Rico] 'impose[d] a drastic impairment when an evident and more moderate course would serve its purposes equally well.'" Mercado-Boneta, 125 F.3d at 15 (quoting U.S. Trust, 431 U.S. at 31.).  Some factors to consider in analyzing these questions

---

[13]The plaintiffs argue that the district court improperly "relied extensively on the bare assertions contained in the defendants' Rule 12(b)(6) motion to make factual findings regarding the extent of Puerto Rico's structural deficit and the appropriateness of Law 7 to address that deficit . . . ."  We are not persuaded that this is an accurate characterization of the district court's opinion.  Regardless, we need not address this argument because we affirm the district court by looking only to the complaint and the assertions and provisions included in Act No. 7 itself.  See Trans-Spec Truck Serv., 524 F.3d at 320 (noting that a court may consider documents incorporated in the complaint, as well as those which the complaint is dependent upon); Ruiz, 496 F.3d at 5 ("[W]e are not bound by the district court's decisional calculus but, rather, may affirm the decision below on any ground made manifest by the record.").

include: "whether the act (1) was an emergency measure; (2) was one to protect a basic societal interest, rather than particular individuals; (3) was tailored appropriately to its purpose; (4) imposed reasonable conditions; and (5) was limited to the duration of the emergency." See Energy Reserves Grp., 459 U.S. at 410 n.11 (citing Blaisdell, 290 U.S. at 444-47); see also Spannaus, 438 U.S. at 242-50.

The reliance interests of the party whose contractual rights are impaired are of course also a relevant consideration. See Baltimore Teachers Union, 6 F.3d at 1021. Because public employees "by definition serve the public and their expectations are necessarily defined, at least in part, by the public interest[,]" they, like private parties in a highly regulated industry, have a diminished expectation that their contracts will not be impaired by the government. Id. ("It should not be wholly unexpected, therefore, that these public servants might well be called upon to sacrifice first when the public interest demands sacrifice.").

The plaintiffs failed to plead sufficient facts from which a court could reasonably infer that Act No. 7 was unnecessary or unreasonable. To begin with, the plaintiffs failed to sufficiently describe the contractual provisions allegedly impaired by Act No. 7, and they therefore failed to demonstrate the extent of those impairments. The most specific description of Act No. 7's

alterations of the plaintiffs' contractual rights was the allegation that it:

> substantially impaired all statutory covenants and contractual obligations included in the extant [CBAs] between the exclusive bargaining representatives and the government agencies related to, inter alia, promotions, demotions, transfers; retention and lay-offs; reduction in work force and any requirement prior to order a reduction in force; reinstatement and registry of illegibility; any cross utilization, prohibition to use employees from another appropriate units; any prohibition to consolidate job duties and job classifications; any limitation to management rights; any disposition that the agency has to comply with contract obligations in conflict with Act No. 7; seniority . . . dispute resolution process, reviews and appeals . . . .

Merely listing the subject matter covered by the contractual provisions at issue is of little help. Rather, determining the extent to which Act No. 7 undermined the plaintiffs' contractual expectations requires knowing what precisely the CBAs promised concerning promotions, demotions, transfers, layoffs, etc. Even though we assume arguendo that there was an impairment, and that the impairment was substantial, ascertaining the severity of the impairment is still a critical inquiry in determining whether a state action is a reasonable means of advancing a public purpose. See Energy Reserves Grp., 459 U.S. at 411 ("The severity of the impairment is said to increase the level of scrutiny to which the legislation will be subjected.").

The plaintiffs also failed to plead any factual content to undermine the credibility of Act No. 7's statement that it was enacted to remedy a $3.2 billion deficit. The complaint alleges nothing, other than the conclusory statement that "the averred purpose is neither significant nor legitimate," to question the existence of the deficit or the "basic societal interest" in eliminating it.

Nor does the complaint aver facts demonstrating that Act No. 7 was an excessively drastic means of tackling the deficit. In fact, almost everything in the complaint challenging Act No. 7's reasonableness and necessity is a conclusory statement. For instance, the complaint averred that "there were other available alternatives with lesser impact to the paramount constitutional rights affected," but failed to specify any such alternatives or plead any factual content suggesting such alternatives might exist. The plaintiffs did not, for example, claim that the legislature refused to consider alternative approaches.[14] See U.S. Trust, 431 U.S. at 30-31 ("[A] State is not completely free to consider impairing the obligations of its own contracts on a par with other policy alternatives."). To be sure, the plaintiffs assert that Puerto Rico should have used federal aid to help offset the

_____

[14]In fact, the legislature actually included non-contract-impairing provisions in Act No. 7, such as the numerous new taxes, which the complaint does not suggest were superficial or otherwise insignificant to the overall legislative effort.

deficit. They did not, however, allege anything about this federal support in their complaint, let alone explain how such assistance would alleviate a $3.2 billion deficit to such an extent as to render Act No. 7's contractual impairments unnecessary.

Admittedly, the complaint includes the non-conclusory observation that the two-year suspension of contractual rights is particularly substantial "considering the life of all [CBAs] can only extend to three years." Although this allegation is probative of an insufficiently tailored remedy, it is not, on its own, enough to create a plausible argument that Act No. 7 was unreasonable or unnecessary.

Finally, no facts have been pled to suggest that Act No. 7 was enacted to benefit a special interest at the expense of Puerto Rico's public employees. To the contrary, Act No. 7, on its face, appears to spread the burden of restoring Puerto Rico's fiscal health across various sectors of society by enacting numerous new tax measures impacting a range of people and entities.

In sum, the complaint did not show how Act No. 7 was "'[un]reasonable in light of the surrounding circumstances'" or "'impose[d] a drastic impairment when an evident and more moderate course would serve its purposes equally well.'" See Mercado-Boneta, 125 F.3d at 15 (quoting U.S. Trust, 431 U.S. at 31). Consequently, the plaintiffs failed to plead facts sufficient to "allow[] the court to draw the reasonable inference that the

defendant[s] [are] liable" for violating the Contract Clause. Because the plaintiffs' appeal of the district court's refusal to exercise supplemental jurisdiction over their Puerto Rico law claims relies on the reinstatement of the federal Contract Clause claim, we also affirm the district court on the supplemental jurisdiction issue.

## III. Conclusion

For the foregoing reasons, the judgment of the district court is <u>affirmed</u>.


**- Concurring Opinion Follows -**

**BOUDIN and HOWARD, <u>Circuit Judges</u>, concurring.** Good arguments exist for placing the burden of proof as to whether the measure is justified on the plaintiff, even in a case where a self-interested government entity is the beneficiary as well as the impairer of the contract. This is the customary rule in cases where the government impairs a private contract but does not itself benefit, <u>e.g.</u>, <u>Seltzer</u> v. <u>Cochrane</u>, 104 F.3d 234, 236 (9th Cir. 1996); the unreasonableness of the impairment, like the substantiality of the impairment, can be said to be an element of the claim, <u>see</u> <u>U.S. Trust Co. of N.Y.</u> v. <u>New Jersey</u>, 431 U.S. 1, 25-26 (1977); and the <u>substantive</u> test of justification <u>vel non</u> is already adjusted in the plaintiff's favor, <u>see</u> <u>McGrath</u> v. <u>R.I. Ret. Bd.</u>, 88 F.3d 12, 16 (1st Cir. 1996).

Further, in a proof-shifting role, the burden is unlikely to matter very much in most Contract Clause cases,[15] so the allocation of the burden to a plaintiff serves primarily as a pleading device to make the plaintiff focus its claim. In practice, the government's rationale for the impairment is usually obvious (and the government usually prevails); the mystery at the complaint stage is likely to be the peculiar claim of

---

[15]Arguments about justification and unreasonableness are often going to turn on a combination of legislative history and legislative fact based on available material. <u>See</u> <u>Buffalo Teachers Fed'n</u> v. <u>Tobe</u>, 464 F.3d 362, 365 (2d Cir. 2006). In practice, when the issue is joined, the government will tend to assert facts that show reasonableness, and the plaintiff will tend to assert those that point in the opposite direction.

<u>unreasonableness</u> that the plaintiff plans to invoke. Knowing this (and the facts claimed to support it) at the outset means that a judgment can be made early on as to whether to go beyond the complaint stage.

Indeed, since 1934, the Supreme Court has only once--in <u>U.S. Trust Co.</u>--struck down a state law that interfered with a government contract on Contract Clause grounds. E. Chemerinsky, <u>Constitutional Law</u> 630, 639 (3d ed. 2006). As then-Judge Breyer wrote for this court:

> The Contract Clause does not make unlawful <u>every</u> state law that conflicts with <u>any</u> contract that contains terms contrary to its provisions. Any such interpretation would make of the clause an insuperable barrier to necessary state legislation. It would threaten to make the Constitution unworkable. . . . Thus, the courts have interpreted the clause so as to harmonize the state's need to legislate in the interests of its citizens with the need to protect investors and other contracting parties against repudiation of a debt or obligation. In doing so, at least since the early 1930's, they have struck down state laws only infrequently.

<u>Local Div. 589, Amalgamated Transit Union</u> v. <u>Massachusetts</u>, 666 F.2d 618, 638-39 (1st Cir. 1981).

One reason why plaintiff victories are rare is that courts are not in a good position to determine the unreasonableness of the impairment unless it is particularly severe. <u>See</u> <u>id.</u> at 643 ("Answering these sorts of questions, and thereby determining the 'reasonableness and necessity' of a particular statute is a task

-24-

far better suited to legislators than to judges."). Thus, before burdensome discovery is imposed and further court time consumed, as a prudential matter it is quite desirable that the complaint plead with some specificity facts showing why the ordinary outcome is not appropriate.

Still, the issue is unsettled. Some language in U.S. Trust Co. blurs the issue, see 431 U.S. at 31 ("In the instant case the State has failed to demonstrate that repeal of the 1962 covenant was similarly necessary."), and some case law in other circuits assists the plaintiffs.[16] No one short of the Supreme Court is capable of definitively resolving a problem that may well have considerable importance in light of the current financial difficulties confronting state governments. So we write to emphasize that the outcome of this case need not turn on definitive resolution of the burden issue.

This is so because the plaintiffs told the district court in writing that the burden of proof as to justification lay on them; specifically, they wrote:

> [T]he Plaintiffs have to show that the contractual impairments were not "both reasonable and necessary to fulfill an important public purpose." Seltzer v.

---

[16]Compare Univ. of Haw. Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1106 (9th Cir. 1999), Toledo Area AFL-CIO Council v. Pizza, 154 F.3d 307, 323 (6th Cir. 1998), and Horwitz-Matthews, Inc. v. City of Chicago, 78 F.3d 1248, 1250 (7th Cir. 1996), with Buffalo Teachers Fed'n, 464 F.3d at 365.

Cochrane, 104 F.3d 234, 236 (9th Cir. 1996) . . . .

But they made no effort in their complaint to offer facts to show lack of justification--save for a few boilerplate conclusory phrases (remedy is "not character appropriate"; "other available alternatives [exist] with lesser impact") that carry no weight under governing precedent. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

Although the plaintiffs say that placing the burden on themselves was the result of a typographical error--the inadvertent substitution of the word "plaintiffs" for the word "defendants" and addition of the word "not"--and that the cited case looked in the opposite direction, a busy district judge is entitled to accept an express concession, see Berner v. Delahanty, 129 F.3d 20, 29 n.8 (1st Cir. 1997). Because the plaintiffs conceded away their argument on the burden of proof issue, we would (even if we agreed with their new position) review the district court's decision only for plain error, see Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 15 (1st Cir. 1999).

In civil cases, it is very difficult to show, as is required by Supreme Court precedent on plain error review, United States v. Olano, 507 U.S. 725, 736 (1993), a miscarriage of justice or something close to it. Chestnut v. City of Lowell, 305 F.3d 18, 20 (1st Cir. 2002) (en banc) (per curiam). Certainly, the plaintiffs have not made that showing here. Puerto Rico has been

-26-

suffering from one of the worst financial crises in its history, its government has been running a large structural deficit, and its credit has been in jeopardy.[17]

Conversely, the plaintiffs do not deny Puerto Rico's financial plight, that employee compensation is a principal expenditure,[18] or that revenue raising as well as cost cutting was part of the package. True, the plaintiffs have offered criticisms, saying, for example, that some of the positions being eliminated were federally funded; but, given federal budget problems, how long this might continue could hardly be certain. Whether or not the statute could have been fine tuned, it is hard to see a miscarriage of justice that would invite plain error review.

Accordingly, the outcome of this case would be the same even if, contrary to the panel decision, the government bore the burden of proof on the justification issue. The plaintiffs assumed that burden themselves, did not in the complaint allege facts to satisfy it, and cannot satisfy the requirements for plain error review.

---

[17]2009 P.R. Laws Act No. 7 (Statement of Motives), available at http://www.oslpr.org/download/en/2009/A-0007-2009.pdf.

[18]See P.R. Office of Mgmt. & Budget, Government of Puerto Rico, FY 2009-2010 Budget: Executive Summary 8 (2009), available at http://www.bgf.gobierno.pr/investors_resources/documents/2009-04-29-ProposedBudget2009-2010-FINAL.pdf (listing "Payroll and Related Costs" as largest consolidated expense item in total consolidated budget).