per curiam:
Nos encontramos ante la delicada situación de atender el reclamo de cientos de empleados públicos para evaluar la constitucionalidad de la Ley Núm. 3-2013, *831 que reforma el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades (Reforma del Sistema de Retiro).
Al suscribir esta decisión, somos conscientes del efecto de esta reforma sobre los planes de retiro de las partes demandantes y otros empleados públicos. Todos los que estamos en el servicio público tenemos familiares, compañeros y compañeras y amigos y amigas cercanos que se afectarán por esta legislación. Por otro lado, sabemos la importancia que tiene la resolución de estos casos sobre la situación económica del país, particularmente, sobre la deuda del Estado que le permite acceso a fondos para el desarrollo y mantenimiento de infraestructura y de otros programas de singular importancia para todos los que vivimos en Puerto Rico. Esta Curia tiene la obligación de adjudicar los casos ante nos y de hacer ese delicado balance entre unos intereses en conflicto de extrema importancia en nuestra vida como pueblo.
Ante este dilema, examinados cuidadosamente los recursos presentados a la luz de nuestro ordenamiento constitucional y de la jurisprudencia, procede que sostengamos la validez de las medidas adoptadas por los Poderes Ejecutivo y Legislativo para resolver la insolvencia actuarial del Sistema de Retiro. Por los fundamentos que exponemos a continuación, se acogen y consolidan los recursos de certificación intrajurisdiccional presentados por Trinidad Hernández y otros, Alvarado Pacheco y otros, así como por De Jesús Vera y otros, y se confirma la sentencia desestimatoria decretada por el Tribunal de Primera Instancia.
I
En síntesis, en estos casos, las partes demandantes solicitaron al Tribunal de Primera Instancia que declarara inconstitucional la Reforma del Sistema de Retiro y que concediera un injunction preliminar y permanente para detener su implementación. En esencia, la reforma con *832 siste en: (1) la congelación de la acumulación de beneficios de los empleados públicos activos bajo los planes de beneficio definido establecidos en la Ley Núm. 447 de 15 de mayo de 1951 (3 LPRA see. 761 et seq.) (Ley Núm. 447) y la Ley Núm. 1 de 16 de febrero de 1990 (3 LPRA sec. 766b et seq.) (Ley Núm. 1), al eliminar la adquisición de nuevos beneficios mediante el sistema actual pero respetando toda acumulación ganada por esos empleados públicos hasta el presente; (2) el incremento en la edad de retiro, el cual se implantará de manera escalonada para aquellos empleados públicos que se encuentran hoy cerca de cumplir con la edad de retiro requerida por las leyes vigentes; (3) el incremento de la aportación de los empleados públicos al sistema; (4) mover los empleados públicos activos al amparo de la Ley Núm. 447 y la Ley Núm. 1 a un plan de contribución definida similar a la Reforma 2000, y (5) la modificación de los beneficios otorgados por las leyes especiales, utilizando todo el ahorro en las aportaciones patronales que esto produzca para allegarle más fondos al sistema de retiro de empleados públicos y así asegurar el pago de los beneficios de los jubilados y de aquellos empleados públicos activos con beneficios acumulados al amparo de la Ley Núm. 447 y la Ley Núm. 1.
Estando el trámite pendiente ante el Tribunal de Primera Instancia, las partes demandantes acudieron al Tribunal Supremo para solicitar la certificación de los casos. Mediante Resolución emitida el 11 de junio de 2013, denegamos las solicitudes y señalamos, entre otras cosas, que el foro primario debía atender con premura las mociones dispositivas que tenía ante sí y que celebrara una vista evidenciaría no más tarde de 18 de junio de 2013. Alvarado Pacheco y otros v. ELA, 188 DPR 598 (2013).
El 17 de junio de 2013, el foro primario emitió una sentencia y sentencia parcial, mediante la cual resolvió las mociones de desestimación presentadas por los demandados y desestimó todas las reclamaciones al amparo de la *833 Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V. Por eso, dejó sin efecto la vista señalada para el día siguiente.
Oportunamente, las partes demandantes, Trinidad Hernández y otros, Alvarado Pacheco y otros, y De Jesús Vera y otros acudieron ante este Tribunal mediante las peticiones de certificación intrajurisdiccional.(1) Por su parte, los recurridos presentaron sus respectivas oposiciones a que se certificaran los casos. Luego del Tribunal de Primera Instancia resolver los casos, y toda vez que este “asunto es de tal importancia que exige una pronta atención” ante la vigencia inminente de la Reforma del Sistema de Retiro, certificamos y resolvemos estos recursos sin más trámite. U.P.R. v. Laborde Torres y otros I, 180 DPR 253, 272-273 (2010).
II
Una parte puede presentar como defensa una moción de desestimación bien fundamentada cuando la reclamación en su contra no justifica la concesión de remedio alguno. 32 LPRA Ap. V, R. 10.2(5); Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920 (2011). Para disponer de una moción de desestimación según este fundamento
[...] el tribunal tomará como ciertos todos los hechos bien alegados en la demanda, que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. Ante una moción de desestimación, las alegaciones hechas en *834 la demanda hay que interpretarlas de forma conjunta, liberal y lo más favorable posible para la parte demandante. La demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar. Colón v. Lotería, 167 DPR 625, 649 (2006).
Por otra parte, tanto la Constitución de Puerto Rico como la federal disponen que no se aprobarán leyes que menoscaben las obligaciones contractuales. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; Art. 1, Sec. 10, Const. EE. UU., LPRA, Tomo 1. Ambas cláusulas buscan asegurar la estabilidad de las relaciones contractuales. Domínguez Castro et al. v. E.L.A. I, 178 DPR 1, 81 (2010), certiorari denegado, Dominguez Castro v. Puerto Rico, 131 S. Ct. 152; Warner Lambert Co. v. Tribunal Superior, 101 DPR 378, 395 (1973).
No obstante, la protección de las obligaciones contractuales no es absoluta, pues debe ser armonizada con el poder de reglamentación del Estado en beneficio del interés público. United States Trust Co. v. New Jersey, 431 US 1, 21 (1977); Warner Lambert Co. v. Tribunal Superior, supra, pág. 394. Por tal razón, es una norma reiterada que no todo menoscabo contractual es inconstitucional. Bayrón Toro v. Serra, 119 DPR 605, 619 (1987); United States Trust Co. v. New Jersey, supra, pág. 16.
Para analizar la validez constitucional de un estatuto mediante la cláusula de menoscabo de obligaciones contractuales, aplica el criterio de razonabilidad. Bayrón Toro v. Serra, supra, pág. 620. Así, al evaluar la interferencia del Estado con la contratación privada, primero se debe auscultar si existe una relación contractual y si la modificación constituye un menoscabo sustancial o severo. Domínguez Castro et al. v. E.L.A. I, supra, pág. 80; Warner Lambert Co. v. Tribunal Superior, supra, pág. 395. De existir un menoscabo sustancial o severo, se evalúa si la interferencia gubernamental responde a un interés legítimo y si está racionalmente relacionada con la consecución del *835 objetivo. Domínguez Castro et al. v. E.L.A. I, supra; Warner Lambert Co. v. Tribunal Superior, supra.
Cuando se modifica una obligación del Gobierno, el escrutinio debe ser más cuidadoso en aras de asegurar que la actuación del Estado no sea en beneficio propio. Domínguez Castro et al. v. E.L.A. I, supra. Por ello, la modificación contractual, además de ser razonable, debe ser necesaria para adelantar un propósito gubernamental importante. Bayrón Toro v. Serra, supra, pág. 619; United States Trust Co. v. New Jersey, supra, pág. 29. En fin, si el menoscabo surge como consecuencia de una modificación razonable y necesaria dirigida a adelantar un interés público, se sostendrá su validez. Id. Al respecto, en Domínguez Castro et al. v. E.L.A. I, supra, pág. 85, establecimos que debemos dar deferencia a la determinación de la Asamblea Legislativa respecto a la necesidad y razonabilidad de la medida.
En 1987, este Tribunal tuvo la oportunidad de ex-presarse sobre una reforma al sistema de retiro de los empleados públicos de la Universidad de Puerto Rico (UPR). Bayrón Toro v. Serra, supra. En esencia, se fijó en cincuenta y cinco años la edad mínima para que un participante pudiera ser elegible para recibir una anualidad, se redujo el importe de la pensión que recibirían los participantes que se jubilaran antes de cumplir los cincuenta y ocho años y sé aumentó la aportación de los participantes al fondo del sistema.
En ese contexto, reconocimos que “un participante en un plan de retiro tiene un interés propietario de naturaleza contractual protegido por la garantía constitucional contra el menoscabo de obligaciones contractuales”. Bayrón Toro v. Serra, supra, págs. 607-608. No obstante, entendimos prudente “armonizar, por un lado, el interés de proteger los derechos de los participantes y, por el otro, el de permitirle al Estado la libertad de adoptar cambios que garanticen la estabilidad y solvencia del sistema”. Id., pág. *836 618. Cónsono con lo anterior, establecimos que el Estado puede, antes de que un empleado se jubile, enmendar los términos del sistema de retiro siempre y cuando las enmiendas sean razonables y adelanten su solvencia actuarial. Id.
III
En los casos que nos ocupan, enfrentamos una legislación de naturaleza económica que reforma el Sistema de Retiro de los empleados públicos. Las partes demandantes alegan que ello constituye un menoscabo de las obligaciones contractuales del Estado. Ciertamente, la Reforma del Sistema de Retiro menoscaba sustancialmente las obligaciones del Estado, pues afecta adversamente las expectativas de los empleados públicos respecto a su retiro.
Determinado lo anterior, debemos examinar si la modificación persigue un interés importante en beneficio del bienestar general y si esta es necesaria y razonable para adelantar ese interés. Al tratarse del Sistema de Retiro, según Bayrón Toro v. Serra, supra, esta reforma será válida si es razonable y necesaria para asegurar su solvencia actuarial. Recordemos que aunque no debemos dar deferencia absoluta a la determinación de la Asamblea Legislativa respecto a la razonabilidad y necesidad del estatuto, sí debemos darle alguna deferencia. Domínguez Castro et al. v. E.L.A. I, supra, pág. 85.
Surge de la exposición de motivos de la Reforma del Sistema de Retiro que el legislador entendió necesario y razonable adoptar las medidas fiscales en controversia para evitar que ese sistema colapse y que el crédito de Puerto Rico sea degradado a “chatarra” por las agencias clasificadoras. En particular, la Asamblea Legislativa especificó que
[para] el año fiscal 2013-2014, los activos netos del Sistema serán negativos, ya que la deuda del Sistema evidenciada por *837 bonos de obligaciones de pensión excederá los activos del Sistema y, para el año fiscal 2018-2019, el Sistema se quedará sin fondos suficientes para cubrir el pago de sus obligaciones, entre las que se encuentra el pago de pensiones a los propios pensionados, ya que sus activos totales se agotarán. Inclusive, es probable que, de no hacer esos cambios, ahora el agotamiento de los activos del Sistema ocurrirá antes.
Actualmente, y conforme a los informes provistos por los actuarios al 30 de jimio de 2011, el Sistema de Empleados Públicos, junto con el Sistema de Retiro para Maestros [...] cargan con un déficit actuarial combinado de $35,260 millones, siendo el déficit del Sistema de Empleados aproximadamente $25,491 millones. Se anticipa que este déficit actuarial habrá crecido sustancialmente para el 30 de junio de 2013. La magnitud del déficit actuarial de ambos Sistemas de Retiro es tal, que equivale a más de cuatro veces el ingreso anual del Fondo General y a más de la mitad del Producto Nacional Bruto de Puerto Rico, ambos para el año fiscal 2011. (Escolio omitido). Exposición de Motivos de la Ley Núm. 3-2013, 17ma Asamblea Legislativa, 12ma Sesión Ordinaria, pág. 2.
Al respecto, el legislador enfatizó que las múltiples medidas aprobadas a través de los años no han logrado atajar la crisis financiera del Sistema de Retiro.
Indudablemente, de la exposición de motivos de la Reforma del Sistema de Retiro se desprende que las medidas adoptadas son necesarias y razonables para atender de forma adecuada la crisis financiera que atenta contra la solvencia actuarial de este sistema. Ello ciertamente constituye un interés público importante pues, al garantizar la solvencia económica del sistema, se beneficia a todos sus participantes y se atiende, en parte, la crisis fiscal que enfrenta el País en protección del bienestar de todos los puertorriqueños.
Ciertamente, no se sostendrá el menoscabo de una obligación contractual si la parte demandante demuestra que existen alternativas menos drásticas o severas que las que el legislador escogió para lograr su objetivo. Domínguez Castro et al. v. E.L.A. I, supra, pág. 84; United States Trust Co. v. New Jersey, supra, págs. 29-31. Ahora bien, amerita mencionar que las partes demandantes alegaron de forma *838 generalizada que existían alternativas menos onerosas, sin detallar cómo estas se llevarían a cabo y cómo asegurarían la solvencia actuarial del Sistema de Retiro. Se limitan a señalar que el Estado puede aumentar sus recaudos con otras medidas, como aumentar la captación del Impuesto sobre Ventas y Uso (IVU) o las contribuciones. Sin embargo, no demostraron que tienen evidencia para convencer al tribunal en un juicio que estas alternativas son viables y menos onerosas. Véanse: Regla 110(a) de Evidencia, 32 LPRA Ap. VI; United Aut., Aerospace, Agr. v. Fortuño, 633 F.3d 37, 42-44 (1er Cir. 2011); Buffalo Teachers Federation v. Tobe, 464 F.3d 362, 365 (2do Cir. 2006), citado con aprobación en Domínguez Castro et al. v. E.L.A. I, supra, pág. 85.
No obstante, es una norma establecida que no corresponde a los tribunales hacer una determinación de novo sobre la existencia de otras alternativas para solucionar el problema. Domínguez Castro et al. v. E.L.A. I, supra, pág. 89. La determinación de la Asamblea Legislativa en torno a las medidas aprobadas constituye un ejercicio de política pública que merece nuestra deferencia en este sistema de separación de poderes. Id., pág. 45. En nuestro sistema republicano de gobierno, las tres ramas deben mantener un balance que respete los límites de las funciones de cada una. Véase Art. 1, Sec. 2, Const. ELA, LPRA, Tomo 1. Recordemos que “[d]ebido a que las Ramas Legislativa y Ejecutiva son las llamadas a establecer e implantar la política pública del Estado, el examen judicial no se puede convertir en una evaluación independiente de la sabiduría o corrección de la legislación o actuación impugnada”. San Miguel Lorenzana v. E.L.A., 134 DPR 405, 431 (1993). Véase, además, Clases A, B y C v. PRTC, 183 DPR 666, 681 (2011).
Incluso, de la propia exposición de motivos surge que la Asamblea Legislativa consideró otros tipos de medidas para resolver el problema apremiante de solvencia que *839 tiene el Sistema de Retiro pero concluyó que “no son factibles y, en todo caso, tampoco pudieran resolver por sí solas la crisis actuarial vigente [...] Por el contrario, se requieren soluciones integradas y abarcadoras en las cuales to-dos los constituyentes del Sistema y todos los contribuyentes aporten a la salvación del mismo”. Exposición de Motivos de la Ley Núm. 3 de 2013, pág. 13.
Por otro lado, del estatuto se desprende que la Reforma del Sistema de Retiro aplica de forma prospectiva y no afecta la pensión de los ya jubilados.(2) Igualmente, asegura a las partes demandantes y al resto de los participantes del sistema que, como resultado de esas medidas, podrán disfrutar de una pensión al momento de cumplir los requisitos para retirarse. La exposición de motivos detalló que ello no sería una posibilidad sin esta Reforma que busca evitar la insolvencia y debacle de este sistema y la degradación del crédito de Puerto Rico con sus consecuencias nefastas sobre la economía.
Por todo lo anterior, concluimos que la Reforma del Sistema de Retiro es constitucional porque, a pesar de que existe un menoscabo sustancial de las obligaciones contractuales en controversia, las medidas implantadas son razonables y necesarias para salvaguardar la solvencia actuarial del Sistema de Retiro, y no existen medidas menos onerosas para lograr ese fin. Consiguientemente, al amparo de la Regla 50 del Reglamento de este Tribunal, supra, y sin ulterior procedimiento, se confirma la Sentencia dictada por el Tribunal de Primera Instancia que desestimó las acciones incoadas por las partes demandantes y aquí peticionarias.

*840
Se dictará la Sentencia correspondiente.

El Juez Asociado Señor Feliberti Cintrón emitió una opinión de conformidad, a la cual se unió el Juez Asociado Señor Martínez Torres. La Jueza Asociada Señora Pabón Charneco y los Jueces Asociados Señores Kolthoff Carabalio, Rivera García y Estrella Martínez emitieron sendas opiniones disidentes.
Opinión de conformidad emitida por el
Juez Asociado Señor Feliberti Cintrón, a la que se une el Juez Asociado Señor Martínez Torres.
La realidad es que corresponde al Estado velar por el bienestar económico colectivo, a expensas del bienestar individual. (Énfasis suplido).(1)
Por PUERTO RICO y por ser lo correcto en Derecho, estoy conforme con la opinión per curiam emitida hoy por este Tribunal. No por chantajes, presiones o comentarios públicos injustos, insultantes y lamentables por miembros de las otras dos ramas de gobierno que han sido electos para servir como líderes y ser ejemplo para nuestros jóvenes, y que tratan de anticipar e influenciar indebidamente las determinaciones de los componentes de la Rama Judicial.
Aunque siento el dolor y la angustia de aquellos empleados públicos que con su trabajo y esfuerzo han laborado arduamente por años con miras a alcanzar un retiro digno, para bien o para mal, las necesidades y el bienestar colectivo de los aproximadamente tres millones y medio de habitantes en Puerto Rico se imponen y prevalecen sobre los *841 intereses individuales de los miles de empleados públicos afectados por la Ley Núm. 3-2013. Véase Domínguez Castro et al. v. E.L.A. I, 178 DPR 1, 15 (2010), certiorari denegado sub nom., Dominguez Castro v. Puerto Rico, 131 S.Ct. 152 (2010).
Debido a la precaria condición de los Sistemas de Retiro de los Empleados Públicos del Gobierno de Puerto Rico,(2) así como a la incertidumbre y las posibles consecuencias adversas a la ya maltrecha economía e inestable capacidad crediticia del país que una determinación distinta a la tomada hoy por esta Curia podría ocasionar, opino humildemente y con gran respeto a los compañeros disidentes, que actuar de otra manera sería, aun con la mejor de las intenciones, contrario a nuestros precedentes constitucionales, al bien común y al futuro de nuestros hijos y de nuestra querida Isla.

Quienes presumieron la existencia de una agenda escondida por parte de miembros de este Tribunal, quedan hoy desmentidos.

 La parte peticionaria compuesta por Alvarado Pacheco y otros, CT-2013-0009, presentó un recurso de apelación ante el Tribunal de Apelaciones el 18 de junio de 2013, pero no incluyó la copia de este en el apéndice incumpliendo con la Regla 20 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B. Por otro lado, no surge del expediente del grupo de peticionarios De Jesús Vera y otros, CT-2013-0010, que haya presentado una moción de reconsideración ante el foro primario o una apelación ante el foro apelativo intermedio, por lo que no podemos corroborar si existe asunto pendiente ante alguno de los foros de inferior jerarquía. De hecho, este último tiene serias deficiencias que incluyen la falta de índice del apéndice y enumeración de las páginas. No obstante, como el recurso de Trinidad Hernández y otros, CT-2013-0008, cumple con todos los requisitos para ejercer nuestra jurisdicción, consolidamos los recursos y resolvemos según la Regla 50 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B.

 En cuanto a las alegaciones de las partes demandantes ya pensionadas, basta con señalar que los beneficios otorgados mediante las leyes especiales que la Reforma del Sistema de Retiro elimina no forman parte de su pensión. Por el contrario, son gracias legislativas que se nutren del presupuesto general del Estado y no con fondos del fideicomiso del Sistema de Retiro. Se trata, más bien, de beneficios adicionales otorgados por la Legislatura. Su pensión queda inalterada. Véanse: Domínguez Castro et al. v. E.L.A. I, supra, págs. 67-70; Asoc. Maestros v. Depto. Educación, 171 DPR 640, 665-666 (2007); Consejo Titulares v. Williams Hospitality, 168 DPR 101, 109 (2006).

 Domínguez Castro et al. v. E.L.A. I, 178 DPR 1, 15 (2010), certiorari denegado sub nom., Dominguez Castro v. Puerto Rico, 131 S.Ct. 152 (2010).

 Según indicado en la Exposición de Motivos de la Ley Núm. 3-2013, aprobada el 4 de abril de 2013, y concediéndole a la Asamblea Legislativa la deferencia y el respeto que siempre nos ha merecido, esta es necesaria para estabilizar las finanzas de los Sistemas de Retiro de los Empleados Públicos del Gobierno de Puerto Rico dada la crisis financiera existente. Los Sistemas de Retiro confrontan una deficiencia de recursos que amenaza con agravar catastróficamente la crisis económica que atraviesa actualmente la Isla, cargando con un déficit actuarial combinado de $35,260 millones, según informes actuariales al 30 de junio de 2011 (se anticipa que ese déficit actuarial habrá crecido sustancialmente para el 30 de junio de 2013). La magnitud del déficit actuarial de esos Sistemas de Retiro es tal que equivale a más de cuatro veces el ingreso anual del Fondo General. Se proyecta que para cumplir con las obligaciones a los pensionados por los próximos 26 años, el Gobierno de Puerto Rico (gobierno central, corporaciones públicas y municipios) tendrá que inyectarle cerca de $2,850 millones anuales a los Sistemas de Retiro. La razón de la Ley Núm. 3-2013 es evitar la erosión total de los activos del Sistema de Retiro de Empleados Públicos y con ello una catástrofe económica sin precedentes para la Isla, al igual que proteger los beneficios de retiro para los miles de servidores públicos activos y retirados.
Dado que el crédito de la Isla se encuentra en una situación sumamente frágil, habiendo sido degradada la deuda pública del Gobierno Central a un punto anterior al llamado “nivel de chatarra”, y ante la grave situación de estrechez fiscal en la que se encuentra todo el aparato gubernamental, el gobierno no cuenta con los fondos suficientes para inyectar el dinero necesario y atenuar el déficit actuarial en los Sistemasde Retiro.