# United States Court of Appeals
## For the First Circuit

———————————

No. 19-2028

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO SALES TAX FINANCING CORPORATION, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,

Debtors.

———————————

HERMANDAD DE EMPLEADOS DEL FONDO DEL SEGURO DEL ESTADO, INC.; UNIÓN DE MÉDICOS DE LA CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO CORP. (UMCFSE),

Plaintiffs, Appellants,

v.

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD; COMMONWEALTH OF PUERTO RICO; STATE INSURANCE FUND CORPORATION; JAVIER RIVERA RÍOS, in his official capacity as Administrator of the State Insurance Fund Corporation; CHRISTIAN SOBRINO VEGA; JOSÉ IVÁN MARRERO ROSADO; TERESITA FUENTES; WANDA VÁZQUEZ GARCED, in her official capacity as Governor; OMAR J. MARRERO DÍAZ, in his official capacity as Executive Director of AAFAF; FRANCISCO PARÉS ALICEA, in his official capacity as Secretary of Treasury,

Defendants, Appellees,

NATALIE A. JARESKO,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain,* U.S. District Judge]

Before

Thompson, Kayatta, and Barron,
Circuit Judges.

Jessica E. Méndez-Colberg, with whom Rolando Emmanuelli Jiménez and Bufete Emmanuelli were on brief, for appellants.
Mark D. Harris, with whom Timothy W. Mungovan, John E. Roberts, Martin J. Bienenstock, Stephen L. Ratner, John E. Richman, and Proskauer Rose LLP were on brief, for appellees.

October 28, 2020

---

    * Of the Southern District of New York, sitting by designation.

**BARRON, <u>Circuit Judge</u>**.  In response to a mounting fiscal crisis, Puerto Rico enacted a series of laws that affect the relationship between public employees in the Commonwealth and their employers.  Two unions representing such employees filed suit in federal district court in Puerto Rico in July 2018, alleging that these laws impermissibly interfere with their collective bargaining rights.  We affirm the District Court's dismissal of the complaint for failure to state a claim on which relief may be granted.

## I.

The Puerto Rico unions that bring this suit are Hermandad de Empleados del Fondo del Seguro del Estado, Inc. and Unión de Médicos de la Corporación del Fondo del Seguro del Estado Corp. (collectively, the "unions").  Each represents workers at Puerto Rico's State Insurance Fund Corporation ("CFSE," after the organization's Spanish-language name), a Puerto Rico public corporation that provides medical and related services to workers in the Commonwealth who have suffered work-related injuries.

As the exclusive bargaining representatives for approximately two thousand employees, these unions negotiate with the CFSE over the terms of their members' employment.  Both unions

have collective bargaining agreements with the CFSE that are in effect.[1]

To address Puerto Rico's fiscal crisis, the Puerto Rico Legislative Assembly passed the four laws (collectively, the "challenged laws") affecting the rights and benefits of public sector workers within the Commonwealth that are at issue here. Set forth in the order of their enactment from earliest to latest, these measures are:

(1) Act 66-2014, the "Government of the Commonwealth of Puerto Rico Special Fiscal and Operational Sustainability Act," which was passed on June 17, 2014;

(2) Act 3-2017, the "Law to Address the Economic, Fiscal, and Budgetary Crisis to Guarantee the Operation of the Government of Puerto Rico," enacted on January 23, 2017;

(3) Act 8-2017, the "Law for the Management and Transformation of Human Resources in the Government of Puerto Rico," passed on February 4, 2017; and, finally,

(4) Act 26-2017, the "Compliance with the Fiscal Plan Act," which became law on April 29, 2017.

---

[1] Both of the contracts were apparently intended to only cover periods that expired prior to the initiation of this lawsuit. Yet, each has a provision automatically extending the contract so long as the parties fail to come to terms on a new agreement. The unions contend that because no superseding contracts have been agreed to, the old ones remain in effect. The defendants do not contest this contention in their motion to dismiss.

- 4 -

The unions filed suit in the United States District Court for the District of Puerto Rico on July 25, 2018. The unions' complaint, after an amendment, asserted claims against the Commonwealth of Puerto Rico, the Financial Oversight and Management Board for Puerto Rico ("FOMB"), the CFSE, and various Puerto Rico government officials based on the way these measures allegedly violated the Contract Clause of the United States Constitution, see U.S. Const. art. I., § 10, cl. 1, and the Collective Bargaining Clause of the Puerto Rico Constitution, see P.R. Const. art. II, § 17. The unions requested both "full compensatory and punitive damages" and declaratory relief. They also requested "cost[s] and attorney fees."

More specifically, the unions alleged in their complaint that, through these four laws, Puerto Rico took away in whole or in part benefits that the unions bargained for on behalf of their members and that their members would otherwise be entitled to under the collective bargaining agreements. For instance, the unions alleged that the collective bargaining agreements guarantee their members a certain number of vacation days and give departing workers the option to convert unused days into cash, but that Acts 66-2014 and 3-2017 eliminate the ability of workers to convert unused days into cash, and that Act 26-2017 generally restricts the maximum number of allowable vacation days to fifteen -- beneath what the unions' contracts would otherwise guarantee. In addition,

- 5 -

the unions alleged that the collective bargaining agreements provide for fringe benefits, including reimbursement for certain travel and clothing expenses, but that Act 66-2014 and Act 3-2017 reduce or eliminate some of these benefits.

Separately, the unions alleged that the collective bargaining agreements establish processes that the CFSE must follow before hiring new employees. But, the unions alleged, Act 8-2017 contains so-called "mobility" provisions that allow for the transfer of employees from other government entities to the CFSE, even when such transfers would bypass the hiring processes provided for in the agreements.

The complaint contended that the District Court possessed federal question jurisdiction to consider the unions' claims under 28 U.S.C. § 1331 because, according to the complaint, "th[e] action arises under PROMESA and the U.S. Constitution." It also claimed that the District Court had subject-matter jurisdiction under 48 U.S.C. § 2126(a), which gives the District Court for the District of Puerto Rico jurisdiction over "action[s] against the Oversight Board, and any action otherwise arising out of [PROMESA]." Finally, it alleged that jurisdiction existed under 48 U.S.C. § 2166(a)(2), which gives the District Court of Puerto Rico "original but not exclusive jurisdiction of all civil proceedings arising under [Title III of PROMESA], or arising in or related to cases under [Title III]." In a filing below, the FOMB

and one of the individual defendants -- Natalie Jaresko, the executive director of the FOMB -- agreed that the District Court had subject-matter jurisdiction under 48 U.S.C. § 2166(a).[2]

On the defendants' motions, the District Court determined that some aspects of the unions' claims for declaratory relief had been rendered moot and dismissed those claims for lack of jurisdiction. See Fed. R. Civ. P. 12(b)(1). It dismissed the remainder of the plaintiffs' claims on the merits because it concluded that they failed to state a claim on which relief could be granted. See id. 12(b)(6). The unions then timely appealed.

## II.

We first address the question of Article III jurisdiction. The question arises primarily because, according to the District Court, the fourth and most recent of the challenged laws, Act No. 26-2017, superseded the three earlier enacted laws that the plaintiffs challenge: Act No. 66-2014, Act No. 3-2017, and Act No. 8-2017. The District Court concluded that, in consequence, the fourth measure mooted the plaintiffs' requests for declaratory relief concerning the three earlier challenged laws. Moreover, the defendants contend that the enactment of even more recent legislation, as well as the expiration of some of the

---

[2] None of the defendants have argued that any of the unions' claims are subject to the automatic stay provisions of PROMESA. See 48 U.S.C. § 2161(a) (incorporating 11 U.S.C. § 362).

provisions of the first three challenged measures, moot still other aspects of the unions' claims for declaratory relief.  The unions disagree on both counts, and so do we.

All four challenged measures were enacted before the plaintiffs filed suit, and none of the provisions in them are asserted to have expired prior to that time.  This suggests that insofar as there is an Article III issue for us to resolve, it has to do with the plaintiffs' potential lack of Article III standing to bring their claims for declaratory relief, rather than with the fact that any post-suit developments rendered those claims moot.  See Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc., 528 U.S. 167, 189-90 (2000).

Moreover, the unions raise claims for damages based on the same alleged violations of the federal and Puerto Rico constitutions that ground their declaratory judgment claims.  And, as we will explain, for that reason, Article III does not bar us from addressing whether the plaintiffs are entitled to declaratory relief.

To see why, it helps to understand that the plaintiffs in their damages claim seek recompense only for the harm caused during the period in which the challenged laws were in effect. There is no doubt that the plaintiffs have standing to bring such claims, and the defendants do not contend otherwise.  There also is no basis for concluding that the fourth challenged law's

passage -- or any other development -- mooted those damages claims. That being so, though, there also is no Article III bar to requesting a declaration that the challenged laws are "null," "void," and "violat[ive]" of the federal and Puerto Rico constitutions, because it is well established that claims for declaratory relief can survive "as a predicate to a damages award" based on the same alleged underlying legal violation. Wolff v. McDonnell, 418 U.S. 539, 555 (1974); compare Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 210 (1995) (noting that while the plaintiff contractor's "allegation that it has lost a contract in the past" due to a certain type of contracting clause "of course entitles it to seek damages for the loss of that contract," that past harm alone cannot establish standing for "declaratory . . . relief against any future use" of that type of clause (emphasis in original)), with PETA v. Rasmussen, 298 F.3d 1198, 1202 n.2 (10th Cir. 2002) ("consider[ing] declaratory relief" to be "retrospective to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred").

Finally, nothing in the complaint expressly asks us to pass on the validity of these laws in the hypothetical world in which they are reinstated at some point in the future. Thus, neither mootness nor standing concerns pose a bar to our consideration of the unions' claims for declaratory relief from

these challenged measures, insofar as they are injured by them. See Wolff, 418 U.S. at 555 (noting that a declaratory judgment may be proper "as a predicate to a damages award"); Dyer v. Wells Fargo Bank, N.A., 956 F.3d 62, 65 & n.2 (1st Cir. 2020) (allowing a claim seeking a declaration regarding the legality of a foreclosure sale to proceed in spite of the sale's completion because the plaintiff also sought damages based on the same legal theory as the claim for declaratory relief); Lippoldt v. Cole, 468 F.3d 1204, 1217 (10th Cir. 2006) (determining that neither standing nor mootness precluded declaratory relief where "the district court had to determine whether a past constitutional violation occurred" to resolve the plaintiffs' damages claim); Crue v. Aiken, 370 F.3d 668, 677 (7th Cir. 2004) ("When a claim for injunctive relief is barred but a claim for damages remains, a declaratory judgment as a predicate to a damages award can survive.").

## III.

As to the merits, we begin with the plaintiffs' claims under the Contract Clause of the United States Constitution, which provides that "No state shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."  U.S. Const. art. I., § 10, cl. 1.  The defendants do not contest that this prohibition applies to Puerto Rico.  See Redondo Constr. Corp. v. Izquierdo, 662 F.3d 42, 48 n.3 (1st Cir. 2011).  We thus must evaluate these claims with respect to each of the challenged laws by asking, first,

"whether the . . . law has . . . operated as a substantial impairment of a contractual relationship," UAW v. Fortuño, 633 F.3d 37, 41 (1st Cir. 2011) (quoting Energy Reserves Grp., Inc. v. Kan. Power & Light Co., 459 U.S. 400, 411 (1983)), and, second, whether any such impairment was "reasonable and necessary to serve an important government purpose," id. (quoting U.S. Trust Co. v. New Jersey, 431 U.S. 1, 25 (1977)).

The burden is on the plaintiffs to prove that Puerto Rico's action with respect to each challenged law's impact on the collective bargaining agreements was not reasonable or necessary to serve an important interest. See id. at 41-42. Because the plaintiffs allege that Puerto Rico impaired a "public contract" for its own "benefit," however, its otherwise "broad discretion to determine whether an impairment of a private contract is reasonable or necessary" is more constrained than it ordinarily would be. Parella v. Ret. Bd. of R.I. Emps.' Ret. Sys., 173 F.3d 46, 59 (1st Cir. 1999).

Our review of the District Court's grant of a motion to dismiss under Rule 12(b)(6) is de novo. See Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc., 920 F.3d 111, 114 (1st Cir. 2019). In conducting that review, we may "affirm the dismissal only if, taking all the complaint's well-pled allegations as true and viewing the other facts in the light most favorable to the plaintiff, the complaint does not allege 'enough facts to state a

claim to relief that is plausible on its face.'" Portugues-Santana v. Rekomdiv Int'l Inc., 725 F.3d 17, 25 (1st Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Notably, "[w]e may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Starr Surplus Lines, 920 F.3d at 114 (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). That means that we may consider the content of the four challenged laws themselves, as well as translated portions of the unions' collective bargaining agreements.

Against this background, the plaintiffs must have pleaded "sufficient facts to allow a court to draw a reasonable inference that" each of the challenged laws is "unreasonable or unnecessary to effectuate an important governmental purpose." Fortuño, 633 F.3d at 45 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). To do so, a plaintiff "can, in the complaint, list the state's articulated motive(s), and then plead facts that undermine the credibility of . . . those stated motives or plead facts that question the reasonableness or necessity of the action in advancing the stated goals." Id. For example, we have explained, "if a state purports to impair a contract to address a budgetary crisis, a plaintiff could allege facts showing that the impairment did not save the state much money, the budget issues

- 12 -

were not as severe as alleged by the state, or that other cost-cutting or revenue-increasing measures were reasonable alternatives to the contractual impairment at issue." Id.

At oral argument, the unions explained that they allege that most of the challenged laws impaired the collective bargaining agreements by reducing or eliminating financial benefits -- like vacation or sick leave -- that would otherwise be owed to the workers under those agreements. We thus begin with this set of alleged impairments.

We may assume, as the District Court did, that each of these alleged impairments constitutes a substantial impairment of the unions' contracts with the CFSE. For, even if we make that assumption, we still conclude that the plaintiffs have not met their burden to plausibly allege that they were not reasonable ones.

The unions do not dispute that resolving the fiscal challenges of Puerto Rico's central government constitutes an "important government purpose." See Aurelius Inv., LLC v. Puerto Rico, 915 F.3d 838, 843-44 (1st Cir. 2019) (summarizing Puerto Rico's financial difficulties), rev'd and remanded sub nom. Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC, 140 S. Ct. 1649 (2020); Fortuño, 633 F.3d at 46-47 (rejecting the plaintiffs' "conclusory statement" that addressing Puerto Rico's then-$3.2 billion deficit was "neither [a] significant nor [a] legitimate"

purpose); <u>Buffalo Teachers Fed'n</u> v. <u>Tobe</u>, 464 F.3d 362, 369 (2d Cir. 2006) ("[C]ourts have often held that the legislative interest in addressing a fiscal emergency is a legitimate public interest."). They also do not dispute that, at least as a general matter, limiting the amount of benefits paid out to workers would produce cost savings that could be useful in resolving a fiscal crisis.[3]

The unions nonetheless contend that none of the financial savings from the benefit cuts to CFSE employees imposed by the challenged laws accrued to the benefit of the Commonwealth, because the CFSE is an independent governmental entity that "is fiscally self-sufficient and . . . does not depend on appropriations from the Commonwealth's General Fund for its operations." Indeed, the unions allege that the CFSE itself is "solvent." Thus, they suggest, the government "could have tailored the challenged legislation" to exempt CFSE workers from the benefit cuts while still generating savings by imposing cuts on the public workers who do affect the Commonwealth's bottom line. Its failure

---

[3] The unions do appear to suggest that certain cuts to fringe benefits at the CFSE were not designed to reduce spending but instead were intended to produce "[e]quity in [f]ringe [b]enefits" between employees at public corporations like the CFSE and other public employees. But, while the challenged laws do reflect a concern about equity in this regard, context makes clear that in seeking to "standardiz[e]" the benefits of public corporation employees and other public employee, Puerto Rico was primarily concerned with "reduc[ing] expenses" at public corporations and saving money.

to do so, according to the unions, renders these alleged substantial impairments unreasonable or unnecessary to secure an important government objective.

There is no basis, however, for the unions' contention that the benefit cuts implemented by the challenged laws are unrelated to Puerto Rico's interest in addressing the fiscal challenges faced by its central government. In recent years, Puerto Rico has passed a series of measures that enable its central government to benefit from the fiscal savings generated at public corporations. Most significantly, Act No. 26-2017, as described in its own preamble, "orders the public corporations and instrumentalities of the Government of Puerto Rico," including the CFSE, "to transfer to the Department of the Treasury the necessary funds to guarantee the government's liquidity" and establishes a process for determining the precise amount to be transferred.

The unions separately ask us to conclude that they have plausibly alleged that the imposition of the benefit cuts was unreasonable or unnecessary to address Puerto Rico's fiscal problems because "other cost-cutting or revenue-increasing measures were reasonable alternatives" to the challenged laws. Fortuño, 633 F.3d at 45. But, the unions alleged only the following bare bones "possible options" as having been available to the Puerto Rico government:

> a. Increase in compliance and revenue collection across the major tax lines (personal income tax, corporate income tax, and [Sales and Use Tax])
>
> b. Reduction or elimination of useless tax credits or incentives.
>
> c. Rightsizing measures within the instrumentalities of the Commonwealth that do not operate as private businesses or enterprises.
>
> d. Planning, development and investment in economic growth projects to increase revenues and collections.

Those listed options -- which do not, for instance, identify any specific "useless tax credits or incentives" or explain why the savings generated by eliminating such tax breaks would rival the savings generated by benefit cuts -- are not adequate to support the plaintiffs' claims that the cutting of CFSE benefits caused by the challenged laws were unreasonable or unnecessary.[4]  See SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of

------

[4] The unions briefly suggest that the transfer of funds from the CFSE to other governmental entities is itself an alternative to the challenged laws.  But, even setting aside the underdeveloped nature of this argument and the resulting waiver problem, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), here, too, the unions failed to plead facts showing that this alternative was an adequate one, see Fortuño, 633 F.3d at 45.  Indeed, as explained above, Puerto Rico is already using savings generated by the CFSE to address budgetary shortfalls elsewhere in the government.

mere conjecture, the complaint is open to dismissal."); Fortuño, 633 F.3d at 47 (affirming a motion to dismiss a Contract Clause claim where the plaintiffs did not "explain how" increased use of federal aid could "alleviate a $3.2 billion deficit to such an extent as to render [the challenged] contractual impairments unnecessary").

There remains, then, only the unions' Contract Clause challenge to the "mobility" provisions of the challenged laws.[5] These provisions authorize the Government of Puerto Rico to move employees between different units of the Puerto Rico government, including to and from public corporations like CFSE. The unions contend that these provisions impair their collective bargaining agreements by, among other things, undermining provisions in those agreements that govern the process for hiring and promoting workers.

Here, too, we may assume that the challenged measures substantially impair the unions' collective bargaining

---

[5] To the extent that any of the numerous provisions challenged by the unions cannot fairly be classified as belonging to one of the two categories of actions that we address and cannot be justified by the same reasoning as the Commonwealth offered for the other actions, the unions fail to identify those provisions or explain why the justifications offered for their enactment were legally inadequate. See Fortuño, 633 F.3d at 45 (requiring a plaintiff raising a Contract Clause claim to "list the state's articulated motive(s)" for the action and "plead facts" that cast doubt on the adequacy of those explanations); Zannino, 895 F.2d at 17 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

- 17 -

agreements.[6] For, even if we make that assumption, the unions have not plausibly alleged that this substantial impairment was unreasonable or unnecessary to secure an important government objective.

In enacting the mobility provisions, the Puerto Rico Legislative Assembly was mindful, given the Commonwealth's fiscal state, of what it believed to be a need to "consolidate[]" services, "delegate[]" them "to the private sector," and, in some cases, "eliminate[]" ones that it believed to be wholly unnecessary. The mobility provisions were intended to facilitate these service cuts while continuing to "guarantee[]" "the offer of services to our citizens" "without involving the dismissal of public employees." The alternative to enacting the challenged mobility provisions and other similar flexibility measures, according to the legislature, was heavy-handed layoffs of "thousands of employees."

---

[6] We do not, however, understand the challenged laws to have wholly eliminated the collective bargaining rights of the unions or the workers they represent. The parties, it is true, do not clearly explain how the "mobility" provisions allowing for employee transfers in and out of the CFSE affect the rights of the transferred employees, their membership in the bargaining unit, or their employer for bargaining purposes. But, neither party contends that the unions or their right to collectively bargain have been eliminated by the challenged laws, and, indeed, the challenged laws themselves appear to contemplate a continued role for public sector unions in collectively bargaining on behalf of their employees.

The unions do not dispute that Puerto Rico's goal of resolving its budgetary crisis while minimizing service disruption and layoffs was a legitimate one, see Buffalo Teachers Fed'n, 464 F.3d at 369, nor do they argue that the legislature's acknowledged alternative of simply terminating large numbers of public employees would have been an adequate substitute for the Commonwealth's chosen course of action. They likewise do not voice any disagreement with the Commonwealth's apparent conclusion that it was necessary to apply the mobility provisions to workers at the CFSE to achieve this goal. Instead, the only alleged inadequacies that they identify with these provisions are the same inadequacies that they identify with the Commonwealth's general approach to addressing its fiscal problems. For the reasons we have already stated, though, those cursory allegations do not suffice to meet the plaintiffs' pleading burden in alleging violations of the Contracts Clause.

**IV.**

We come, then, to the unions' claims under the Collective Bargaining Clause of the Puerto Rico Constitution. That provision guarantees employees of "instrumentalities of the government operating as private businesses or enterprises . . . the right to organize and to bargain collectively with their employers through representatives of their own free choosing in order to promote their welfare." P.R. Const. art. II, § 17.

- 19 -

The District Court dismissed these claims as barred by the applicable statute of limitations. It relied on P.R. Laws Ann. tit. 31, § 5298, which establishes a one-year statute of limitations for "[a]ctions to recover or retain possession" and "[a]ctions to demand civil liability for grave insults or calumny, and for [certain] obligations arising from . . . fault or negligence . . . ." See also Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 204 (1st Cir. 2015) (noting that state statute of limitations law applies to state law claims). Our review is de novo. See Santana-Castro v. Toledo-Dávila, 579 F.3d 109, 113 (1st Cir. 2009).

We may quickly dispose of as waived the plaintiffs' contention that § 5298 does not set forth the applicable statute of limitations for these claims, due to its late-breaking and underdeveloped nature. See Rife v. One W. Bank, F.S.B., 873 F.3d 17, 19 (1st Cir. 2017); Zannino, 895 F.2d at 17. The plaintiffs first challenge the statute's application in their reply brief, even though the District Court had applied § 5298 below and even explained its holding. We thus take up the plaintiffs' contention that, under Puerto Rico law, § 5298 did not begin to run so long as the "challenged [laws] [were] still valid and enforced," and hence that there is no statute of limitations bar to their claims. To support that contention, they assert that they are challenging "tortious . . . act[s]" that are "of a continuing nature" and thus

- 20 -

that, under Puerto Rico law, the limitations period could only have begun to run "when the last acts . . . [were] verified or the definitive result [was] produced," whichever occurred later. Rivera-Ruiz v. Municipality of Ponce, 196 D.P.R. 410 (2016) [Transl. at 14].

Under Puerto Rico law, "continuing acts or omissions" toll § 5298's limitations period. Id. at 15. But, we are dealing here with harm resulting from the enactment of a statute, and the plaintiffs point to no authority to support their assertion that the alleged interference with their bargaining rights constitutes such "continuous acts or omissions" when it results from the passage of legislation alone. Certainly Rivera-Ruiz, on which they rely, did not deal with harms caused by a statutory enactment. Moreover, we have previously held that "the continuing violation" doctrine does not apply "to facial takings claims" under the Takings Clause of the federal Constitution, see Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jiménez, 659 F.3d 42, 51 (1st Cir. 2011), because such a claim necessarily targets "the mere enactment of a statute," id. at 48 (quoting Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 494 (1987)), and so "accrues at the time the offending statute . . . is enacted or becomes effective" even though "the precise dollar amount that would be" lost over time is unknown, id. at 50-52.

To be sure, unlike in Asociación de Suscripción Conjunta, Puerto Rico rather than federal law governs the accrual date here. See Quality Cleaning, 794 F.3d at 204. But, we do not see why we should presume that the Puerto Rico Supreme Court would disagree with our reasoning in Asociación de Suscripción Conjunta, which rejected the notion that a challenge to the "mere enactment" of a statute takes aim at a "continuing violation," 659 F.3d at 51-52, especially given that the unions identify no contrary authority from any court, whether in the Commonwealth or not.

**V.**

Accordingly, we **affirm** the dismissal of the unions' claims.